I'll bring in the next set of attorneys. The next case is 2020-60906, Romario Benitez-Pinot v. Merrick Garland. Ms. Watson, you may proceed. I'm sorry. Good morning. If it pleases the court, my name is Jacqueline Watson and I am appearing on behalf of Petitioner Romario Benitez-Pinot. I previously reserved five minutes for rebuttal. This is an immigration case and Mr. Benitez-Pinot is seeking to review a denial of his statutory motion to reopen filed under 8 U.S.C. section 1229A subsection B5C. Mr. Benitez-Pinot's motion to reopen was filed under the two sub-provisions of that provision 1229A subsection B5C. He first argued the sub-provision two, the second one, did not because it did not place any time restriction on the filing of his motion to reopen because he did not receive notice of the hearing as contemplated under 1229A1. It was in his argument being that it was not himself that provided the incorrect address but it was an adult sponsor to whom he was released to while he was a little I, that this failure to appear was due to exceptional circumstances and that the 180-day deadline should be equitably told. And there has been a 28-day notice of supplemental authorities filed respondents to which Petitioner has replied. We both agree that Rodriguez v. Garland is a relevant case that was decided after briefing was concluded in this matter. And at the time of Mr. Benitez-Pinot's motion to reopen and BIA appeal, there was actually binding case law that precluded the argument that was later held in Rodriguez as a result of Nice-Chavez v. Garland. And although Mr. Benitez-Pinot's motion was filed after Pereira but before Nice-Chavez and Rodriguez, Mr. Benitez-Pinot did not argue the exact issues precluded by Pierre Paul, but he did argue that the deficiency of the notice to appear, the lack of the address and the time and date and location of the court did affect his diligent efforts to inquire about the immigration case independently from the bad information that he was receiving from the sponsor to whose charge he was released. Now, in the original... Yes. Did your client neglect to apprise the immigration court of his address and under sphagnolbastos, would that mean that there is no error regardless of whether the notice was sufficient underneath Chavez? I would distinguish sphagnolbastos because in sphagnolbastos, the person to whom the NTA, the notice to appear was served is the one who gave the bad information. And more like Rodriguez, in Rodriguez, Mr. Rodriguez, when he was served the NTA, the address was valid that was on the NTA. Now, although in this case, the NTA does not contain the address, it's blank. Even though that is true, it is still more like Rodriguez because at the time he was served the NTA in August, 2017, he was in the physical custody of the shelter of ORR. So the address that they would have at the moment of service of the NTA would be correct. It was later when he was released from ORR that the sponsor to whom he was being released gave the bad information. But how old was he then? He was 16 when he was released from custody. When he became 18, did he try to clarify this or do anything right away? He did. I'm sorry. Yes, he did. Right away when he turned 18, because of the neglect, he was not in a good home. When he turned 18, was emancipated and he was pretty much released from the ORR requirements of staying with the sponsor, he left. And he went to, he turned 18 in December. He went to see an attorney on his own dime in December, in, sorry, in January, 2019. He turned 18 in December, 2018, saw an attorney in January, 2019. They told him how much it would cost. He went to work, saved the money and was able to in the meantime, if he knows that they have this wrong address and he's no longer a minor. And in fact, we have held that the sponsors can find them, other people, parents, not sponsors, but parents or aunts or others can, they're responsible for that. And you may think that's a harsh result, but we have cases where we bound people by their relatives and other people. But even assuming argument though, that we weren't going to bind your client based upon those representations here, did he have an independent responsibility to notify of his correct mailing address once it became clear that they do not have, they certainly didn't have his correct mailing address because he's moved and he knows he's moved. And that, and that was the problem because the, when he found out about the in absentia order was when he found out at the same time that the address was incorrect. And he didn't have a mechanism available to him to number one, know that the address was incorrect because it wasn't listed on the notice to appear. In addition, he could not call the court directly because the notice to appear was missing the place of hearing. It said to be set. And in all the places where there's a location of the court, it says to be set or be determined and the place and time to be set and to be set. So on the face of the notice to appear that he has, there is no indication that the address is incorrect. Okay. But he's also not keeping them apprised. Did he have that, that piece of paper that said you must keep a surprise? Yes. Okay. Because, I mean, you didn't have to go to that particular court because we, the regulations say that an office, you can report it to an officer and that's, we've had a case with that too. Unfortunately we have, you know, we have a lot of these cases and then reporting it to an officer, you could tell your, and then it would be on them to make sure it got put in the file. Yes. Remember he's released from custody. His sponsor gives an address that he at the time doesn't even realize is incorrect, does not know is incorrect, assumed is correct. They move there and he actually doesn't move. He leaves the custody of ORR, goes straight to the sponsor and stays in that same sponsor's home thinking the whole time the address the sponsor gave was correct. Okay. I'm sorry, go ahead with your argument. I had quite a few questions, so I apologize. Okay. So, and, so as I was saying, Mr. Benitez did not receive that hearing notice that was issued later that was first mailed to the correct address at the time of the filing of the NTA, which would have been the ORR shelter. And then later sent to the incorrect address given to the government at release by the sponsor. So, Mr. Benitez is proceeding and not apprised of that fact until much later. And the decision, the failure to receive the notice of the hearing and know where the hearing was, was a combination of several factors. But none of them, like the other cases or like Spagnola, for example, in which it was the respondent himself that was the person who gave the false information. In fact, he had no time. Yes. Ms. Watson, in a broader piece, isn't our law that the error in the address has to have been done by the government? In other words, if he said, I live at 112 Main Street and they sent it to 412 Main Street, that would be the government's error and that would be a whole different world. But here, it is not the government's error. They sent it to the address they were given. It was the uncle lying or whatever. I mean, taking the facts and the best piece to your client, the uncle lying. But if we say, oh, if your uncle lies about your address, then that's not your problem. Aren't we going to have a lot of people that want to stay here for years to go ahead and do that? And then when they're finally, because we have had plenty of immigrants who have come here, who have been removed in absentia and do not get discovered until years later, they're arrested for a speeding ticket. And that's when they try to set aside their absentia. And so if we're going to say, well, your uncle can lie and it's not your problem, that's going to really create a lot of issues. And we've not said that before, we said quite the contrary. It has to be the government's error. Absolutely. Well, it hasn't only been limited. It's also, I wouldn't say limited to the government error. However, when one is arguing that there is no notice, there are factors taken to account because sometimes it comes down to, especially when it's no notice and there's no undeliverable letter as what happened here. And there still have been cases where the addresses, it's been alleged that the address was correct, for example, and there is no government error, but they're still finding grounds for motion to reopen. If the evidence is credible. The government error there is the mail wasn't delivered. I mean, yes, mail can get lost. I could send you a letter, I could put it in the mailbox and I put the right address and it just never gets to you. We get that. And that's what a lot of these cases are about, but that is not this case. And so what I, let me ask you this, what is your best case for the concept that if there was no government error and no failure of the mail, mailman to deliver or mail people to deliver, okay. That you can still prevail on that. What is your best case for that proposition? I would, I'm stuck with a combination of cases really because in these motions to reopen as they look at them in a case by case basis, I would probably look at Gomez and they're again, not really touching on exactly what we have here, which is why this is a unique argument that, or I should say a unique circumstance in which though the examination of motions to reopen based on no notice are reviewed in a case by case basis. And if the evidence is not credible, if the evidence doesn't persuade the immigration judge to reopen, then I think you would avoid that floodgate of people who are just trying to, especially when they're caught years later. That does happen. But in this case, that's not what happened. He went on his own and found this and brought himself to the attention of the government saying there was a mistake that was not, there was intentional behavior for sure, but not on his part. And there have been also cases where there's been fraud, for example, notarios in immigration cases, like when notarios do not deliver an address or when an attorney doesn't deliver a notice of a hearing to a client. Those cases, there may not be a mistake in the government's part. The notice may have been mailed to the correct address and then delivered, but there's no notice to the respondent. What about the, can you comment on the, we have our own case, but the government also had a case post Rodriguez that distinguishes Rodriguez. Did you, the BIA decision, its name is escaping me at this very second. Do you know what I'm talking about? I'm sure the government will opine on it. You can talk about it on rebuttal if you want. The BIA case, I'm not aware of. BIA came out with an opinion post Rodriguez that said Rodriguez was wrong. Oh yes, yes. I am aware of that case. I'm sorry, I cannot remember the name of the case. I am aware of the case. Yes. And it's pretty much applying Rodriguez only in the fifth circuit, limiting it to the fifth. Right. Even if Rodriguez applies, it would be limited. Correct. Not only that, but they say that we should now defer. They've filed briefing in other cases that say that because they have given an opinion that we have to give Chevron deference to that and that the other opinion was not a brand X case. And so we don't have to, we don't have to keep with our opinion because it wasn't a clear law in the Rodriguez. You know what I'm saying? So what do do you have any comment on that? Well, it's okay if you don't. I really don't have much comment on that except that I would, I mean, I would defer to the fifth circuit for at least, you know, in terms of the interpretation. I believe Rodriguez itself gave the fifth circuit the opportunity to either defer or interpret the case law as it sought fit and had every opportunity to grant deference to BIA should it have chosen. So other than that, I don't really, I would say that Rodriguez would be the correct interpretation, especially given Chavez. Well, thank you. We have your argument and you said time for rebuttal. Yes, I did. I did. I'm correct. Thank you. Thank you. Good morning, your honors. May it please the court. So I'll down on behalf of the attorney general of the United States government asked the court to deny the petition for review as the agency did not abuse its discretion and deny the petitioner's motion to reopen. As an initial matter, I wanted to address the 28 J letter that was submitted by the attorney general of the United States government. The petitioner did not challenge the sufficiency of the NTA. The government and Aldo Kander wanted to advise the court of the government's position regarding these recent decisions. However, our position is that Spagnol controls and is most analogous in this case and Rodriguez does not apply. Like Spagnol, the petitioner here did not provide a valid address. Thus, he forfeited his right to notice. As a result, any reliance on Rodriguez or the sufficiency of the NTA would be misplaced and inapplicable here. But they didn't raise Rodriguez. So regardless of how we think Spagnol interacts with Rodriguez, it does not matter here, right? Because they didn't raise the, not Rodriguez itself, but the issue underlying Rodriguez. That's correct, your honor. And as I mentioned, to have a correct NTA in one document. And since they didn't, that that shouldn't count regardless of the mailing issue, that that's the argument they could have made even before Rodriguez to keep it, but they didn't make that argument. That's correct, your honor. But as Aldo Kander, we wanted to make mention of it to the court and advise the court of our position. Should the court have that case in mind. So you're saying even if they had preserved the argument preceding Rodriguez, they can't benefit from Rodriguez because they never gave the correct address and that's Spagnol. And we're talking about Nis Chavez, right? We're saying this is not a Nis Chavez case because it was never argued or presented as a Nis Chavez case. That's correct, your honor. Yes. So turning to the merits of the case, petitioner's motion was undisputedly untimely. Therefore, he was required to demonstrate notice. Here, the agency properly noted that the petitioner was properly served with an NTA. He was advised of his responsibility to update the court with an accurate address. The notice was delivered to the address provided was not returned as undeliverable. And critically, the petitioner affirms that neither he nor his uncle provided the court with a valid address. And as this court has held in Gomez Palacio, failure to receive actual notice due to the petitioner's neglect to apprise the immigration court with an accurate address does not mean that the petitioner did not receive notice. Petitioner contends that because of his age, then he somehow obviated his obligation. But as this court has in the petitioner was 16 in this case. Therefore, the agency did not use this discretion when it charged the petitioner with proper notice. So did you agree? Oh, sorry. Go ahead. Do you have anything to say? What would you say if someone said this was harsh? Because the person is, you know, technically a minor under other laws? Is this a harsh result? Or not really? No, Your Honor, we wouldn't say it's a harsh result. The petitioner was issued an NTA in 2017, did not take any action other than asking a relative until the beginning of 2019. So we would we would argue that it was reasonable for the agency to determine that that wasn't sufficient, or his inaction within that time period was reasonable. In this case, it wasn't arbitrary or with my statement of the law that in terms of the wrong address issue, it has to be the government error for that wrong address to matter. In other words, if the government is my example of the 112 Main Street that the government wrote down or entered in the computer for 12 Main Street, that would be a government error. And that would be a different story than we have here. Right? Yes. Yes, Your Honor. The issue of not receiving when there's not a government error can be the post office issue. You know, the mail person didn't properly deliver it got lost at the post office. That also is a separate question where the person testifies, I didn't get it, and so on and so forth. I was checking my mailbox every day. And my mother went there with me and all I mean, you know, whatever, right. So those are two different worlds. And neither of them applies here. The government error on the address or the post office failure to deliver. Yes, Your Honor, that's correct. Because there was no the mail wasn't returned as undeliverable in this case. And along the lines of Judge Haines' question, does it matter that it was, in a certain sense, the government's involvement in pushing him to his uncle as the guardian in effect? And so does the government's arrest on that appointment for that appointment of his uncle as the guardian? And consequently, because there is that connection between the obligations that he had and the government to assign that to the government? Well, no, Your Honor, I mean, because there's nothing in the record indicates that the government pushed the uncle specifically onto the petitioner. It's just the relative that was available to the petitioner. So there's no action of the government in that sense. I mean, the government had no part, the government had no part in assigning him to the uncle? I'm not sure if the petitioner had any other relatives. It may have been that that was his only relative available. I think that would be up to the petitioner at that point. I think that was required to be released to a guardian. However, I don't believe that the government, it was the government. He could have stayed where he was, right? He could have. And that was his choice, not to stay there. Right. Yeah. It's the notion that he has to live somewhere other than on his own is separate from what happened here because he could have stayed in that place where he was originally, right? That's correct, Your Honor. It was the petitioner's decision and the uncle's decision both mutually to decide that he would go live with the uncle. In sum, it's not the government's action deciding where he lives if he decides to leave the shelter. Even if the petitioner was entitled for notice, which in this case, we argue that he wasn't, he still didn't present sufficient evidence to rebut the presumption of delivery. As mentioned, that the notice was a return is undeliverable. Petitioner also did not act diligently. As I mentioned, there was no action from 2017 until early 2019. Moreover, the petitioner his affidavit indicated that he moved in December of 2018 and did not provide an updated address until April. Therefore, there's also a lack of diligence in that aspect. Does his youth matter at all in terms of forgiving him for the failure to follow these formalities? Pursuant to this court's case law, at the age of 14, he carries the obligation to update the court of those formalities and those requirements. Consequently, as the petitioner was properly charged with notice, he was required to file his motion within 180 days. Here, the agency, assuming that his uncle's deceit was an exceptional circumstance, still determined that the petitioner established equitable tolling of his 180-day deadline. If there are no further questions, then in sum, the government's position is that the agency acted reasonably in concluding that petitioner did not establish extraordinary circumstances beyond his control or that he acted with sufficient diligence to warrant equitable tolling. Therefore, the agency did not abuse his discretion for such reasons. May I ask you, what does it matter that as a 16-year-old, he was relying on his uncle to tell him what kind of mail was being received? And at least as far as the case at this point is concerned, the uncle lied to him in the sense that he knew that the mail would never come to him. Does that make a difference? Well, the agency did consider his uncle's deceit, which, assuming arguendo, the agency gave him the benefit of the doubt and said that even if we assume that his uncle's deceit was an exceptional circumstance to allow him to file the motion within 180 days, petitioner still did not file the motion within 180 days and did not show extraordinary circumstances to toll his period, which is a higher standard than the extraordinary circumstances. Why is it not an extraordinary circumstance when his uncle, who was the sole person to whom they were mailing this notice, address that he provided, and to whom his carry, the government had entrusted, an ordinary circumstance? How was this 16-year-old to ever know when his hearing was to occur? Yes, Your Honor, but he carries the responsibility. He could have contacted DHS. He could have contacted any immigration court. He had his A number. He was advised of his responsibility to apprise himself. In other words, he could not rely on his uncle, to whom he'd been assigned by the government. Yes, Your Honor, but even in his affidavit, the petitioner sheds light in regards to his relationship with his uncle in stating that it wasn't a good relationship. Therefore, one could imply that he was aware that his uncle probably was not a trustworthy source. Therefore, he should have upheld his obligation to inform himself by contacting DHS, the immigration court. There's also an EOR portal, which he could have used to avail himself to notice or not. Your Honor, I understand you just said that it's part of his argument that he should, at some point, understood that his uncle was lying to him when he said that he had not received any mail. Your Honor, the uncle's deceit was entirely considered within the agency's decision, but pursuant to this court's case law, it's just insufficient to establish that the agency acted arbitrarily or irrationally in its decision. It's not lawful in the U.S., right? I'm sorry? His uncle was not lawfully in the U.S., correct? Correct, according to his... He knew that. He knew that. Right. Okay. Counsel, also, even if you spot him that time period when he was with his uncle, and you do equitable tolling for that time period, it's still he had time after he was already gone after the 180 days, right? That he didn't... Right. ...still didn't act, right? Right. So, starting December of 2018, when he moved out, he should have apprised the court of his change of address within five days. Oh, well, it's terrible that the uncle didn't do what he was supposed to do, and our case law doesn't put that on the government, but even assuming you're concerned about that, he still had a long enough time period after the fact that he didn't, on his own take, when he was no longer living with his uncle. That's correct, Your Honor, that he did not act... He did not file his motion until April of 2019, which was four months after he first learned of his removal order, which was in January, according to his affidavit. Okay, but after he left to live, he left to live in... Was it in November or December? December. Yeah. Okay. Okay. Anything else? Saldana, do you have anything else? No, that's it for me, Your Honor. Okay. If there are no further questions, then I think we have your argument. Ms. Watson, you'd save time for rebuttal. Thank you. I would like to, Justice Haynes, amend or add to the list of cases, and it was in the back of my mind, it's Torres Hernandez v. Lynch, but I believe it's in the material because it's commonly cited as Hernandez v. Lynch, and that would be another case that I would cite as just going beyond the issue of non-receipt, even when there's an undeliverable mail. I would also like to point out that under the regulations at 8 CFR 1003.15 D1, the ones that require the change of notice, once there is a removal order, the court no longer has the case. So, after he leaves his uncle's custody in December and goes in January and finds out that he has an in absentia order of removal, there's really nowhere to send a change of And that motion to reopen was filed within the 180 days, which I believe is six months. So, once he found out the in absentia order in January and files in April, he is still within the 180 days. And I'd also like to just respond to the issue of his age and Lopez Dubon. The issue of his age is not whether he is old enough to receive the notice to appear. He is old enough to receive the notice to appear. But it is not only his, we're not saying solely his age is the extraordinary circumstance that would toll the time or that would be sufficient to find that he was diligent in discovering this order. It is just part of it. Disability after age 18 or before, sorry, disability minority before age 18 in immigration law and other contexts is considered a legal disability. But again, it is not the only factor that was presented by Mr. Benitez-Pinon. He also presented evidence of mental health issues. He also raised the issue of the neglectful conditions he was living in. And then he also raised the issues that were described in Lugo Rescindes such as unfamiliarity with the legal system, the inability to find the court because of the lack of information in the notice to appear, his PTSD. And therefore, it is not only his age that Mr. Benitez-Pinon is relying on in order to make the case for extraordinary or even exceptional circumstances. And if there's no more questions, I'll go ahead and rest. Thank you, Ms. Weiss. Thank you. We've heard both arguments and we appreciate them very much.